Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorneys for Plaintiff*
and those similarly situated

# IN THE UNITED STATES DISTRICT COURT FOR

# THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BEN FABRIKANT, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICO LIFE, INC., a Texas corporation, LESLIE RIOS, an individual, and JOHN DOE,<br><br>    Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded**<br><br>**Trial Location: Lincoln** |

## **CLASS ACTION COMPLAINT**

1. Plaintiff BEN FABRIKANT ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant LESLIE RIOS, ("Leslie Rios") and Defendant AMERICO LIFE, INC., ("Americo") and Defendant JOHN DOE ("John Doe" or together, "Defendants") to stop their illegal practice of placing unsolicited calls that play an artificial or prerecorded voice message to the residential and/or cellular telephones of consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

**NATURE OF THE ACTION**

2. Americo markets and sells final health insurance to individuals through a network of insurance agents. As a part of their marketing, Defendants made thousands of unsolicited phone calls that played an artificial or prerecorded voice message.

3. Defendants did not obtain express written consent prior to sending these artificial or prerecorded voice messages and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

5. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendants' use of technological equipment to spam consumers with its advertising on a grand scale.

6. By placing the calls at issue, Defendants violated the privacy and statutory rights of Plaintiff and the Class.

7. Plaintiff therefore seeks an injunction requiring Defendants to stop its unconsented calling, as well as an award of actual and/or statutory damages to the Class members, together with costs and reasonable attorneys' fees.

**PARTIES**

8. Plaintiff BEN FABRIKANT is a natural person and is a citizen of Lincoln, Nebraska.

9. Defendant AMERICO LIFE, INC. is an entity organized and existing under the laws of the state of Texas with its principal place of business at 300 W. 11th St., Kansas City, Mo 64105-1618.

10. Americo's registered agent is listed on the Texas Secretary of State website as CT Corporation System, 1999 Bryan St., Ste. 900, Dallas TX 75201.

11. Defendant LESLIE RIOS is an individual residing in Oxnard, California.

12. Defendant John Doe is an unknown business entity.

### JURISDICTION AND VENUE

13. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

14. This Court has specific personal jurisdiction over Defendants because Defendants directed the violating phone calls to be placed to Plaintiff in this District.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury substantially occurred in this District.

### COMMON FACTUAL ALLEGATIONS

16. Americo markets and sells final expense insurance.

17. Leslie Rios is a sales agent for Americo.

18. Ms. Rios and Americo hired John Doe to cause unsolicited phone calls playing artificial and/or prerecorded voice messages to be automatically called.

19. Unfortunately, Defendants failed to obtain consent from Plaintiff and the Class before bombarding them with these illegal messages.

## FACTS SPECIFIC TO PLAINTIFF

20. On February 11, 2023, at 3:37 p.m., Plaintiff received an unsolicited phone call from John Doe soliciting Americo's final expense insurance.

21. When Plaintiff answered the call, Plaintiff heard an artificial or prerecorded voice telling him to "press 1" for more information on final expense insurance.

22. Plaintiff pressed 1 to identify the caller and was connected with Leslie Rios. The call lasted approximately 36 minutes. Plaintiff then received a follow up text from Leslie Rios containing a quote for final expense insurance from Americo.

23. Plaintiff never consented to receive calls from Defendants. Prior to this interaction, Plaintiff never heard of Defendants and had no relationship with them whatsoever.

24. Defendants' call violated Plaintiff's statutory rights and caused actual and statutory damages.

25. On February 28, 2023, Plaintiff's attorney wrote a letter requesting Defendants' telemarketing policy, but Plaintiff did not receive a response.

26. In addition to causing statutory damages, the illegal calls caused annoyance, intrusion on privacy and seclusion, wasted cell phone battery, and time to Plaintiff to investigate the intrusion to find out who was calling.

## CLASS ALLEGATIONS

27. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

> **TCPA Class**. All persons in the United States who: (1) from the last 4 years to present (2) whose phone numbers were called (3) to promote Americo's products and services;

28. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendants'

subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

29. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendant placed telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

30. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

31. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

32. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to

the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

33. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a. Whether the phone calls used an artificial or prerecorded voices;

   b. Whether the calls were caused by Defendants;

   c. Whether Defendants obtained written express consent prior to the calls;

   d. Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of Defendants' conduct.

34. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual

litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## BASIS FOR LIABILITY

35. Even if Americo and/or Leslie Rios did not personally make the TCPA violating calls to Plaintiff, they are liable for the TCPA violations under the following theories of vicarious liability: Actual Authority, Apparent Authority, or Ratification.

## ACTUAL AUTHORITY

36. Americo and Leslie Rios authorized and hired John Doe to generate prospective customers through calls employing an artificial or prerecorded voice.

37. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (emphasis added).

38. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id*. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

39. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is

liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

40. Defendant John Doe solicited Plaintiff on behalf of himself and the other Defendants. Accordingly, John Doe had the other Defendants' actual authority to solicit Plaintiff by using artificial or prerecorded voice messages.

## APPARENT AUTHORITY

41. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

42. Defendants authorized John Doe to generate prospective business for them using artificial or prerecorded voice calls.

43. John Doe robocalled and transferred calls to Leslie Rios who solicited Americo end of life insurance. The integration of their sales efforts was so seamless that it appeared to Plaintiff that Defendants all appeared to be acting together as the same company.

44. Consumers, including Plaintiff and members of the Class, reasonably believed and relied on the fact that Defendant John Doe had received permission to sell, market, and solicit the products of Americo.

45. As a direct and proximate result of John Doe's illegal phone calls – which were made on behalf of and with the apparent authority of the other Defendants, Plaintiff and Class members suffered actual damages, including their time to answer the violating calls, depleted battery life, wasted time, invasion of their privacy and the nuisance of receiving the calls.

## RATIFICATION

46. Leslie Rios and Americo knowingly and actively accepted business that originated through the illegal calls placed by John Doe.

47. By accepting these contacts and executing contracts with the robocall victims, Defendants "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of John Doe, as described in the Restatement (Third) of Agency.

48. John Doe called Plaintiff and solicited customers to transfer to Leslie Rios and Americo.

49. Leslie Rios and Americo received new customers and the possibility of new business.

50. Leslie Rios and Americo ratified John Doe's TCPA violations by knowingly accepting the benefits of new customers and revenue despite the fact that the sale was generated through illegal calling.

51. Leslie Rios and Americo further ratified John Doe's TCPA violations by being aware of the violations, being willfully ignorant of the violations or by being aware that such knowledge was lacking.

52. As a direct and proximate result of John Doe's illegal phone calls, Plaintiff and the Class members suffered actual damages, including their wasted time to answer the violating calls, the monies paid to receive the calls, the depleted phone minutes available to them, invasion of their privacy and the nuisance of receiving the calls.

### FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227(b)
### (On behalf of Plaintiff and the Class)

53. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

54. Plaintiff and the Class members received phone calls from Defendants.

55. When they answered the calls, they heard an artificial or prerecorded voice message advertising end of life final expense insurance coverage on behalf of Defendants.

56. As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop its illegal calling campaign.

57. In addition to causing statutory damages, the illegal calls caused annoyance, intrusion on privacy and seclusion, wasted cell phone battery, and time to Plaintiff to investigate the intrusion to find out who was calling.

58. Further, Defendants made the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C), warranting an increase in statutory damages from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff BEN FABRIKANT, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing his counsel as Class Counsel;

B. An injunction requiring Defendants to cease all unlawful calls without first obtaining the call recipients' express consent to receive such calls, and otherwise protecting interests of the Class;

C. An award of actual damages and/or statutory fines and penalties;

D. An award of reasonable attorneys' fees and costs; and

E. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: April 13, 2023    Respectfully submitted,

By: /s/ Mark L. Javitch

Mark L. Javitch (CA 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo, California 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorneys for Plaintiff and the Putative Class*